# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

ALICE BROWN,            )
                                 )
                 Plaintiff,      )
                                   )
v.                                   )      No.06-0380-CV-W-FJG
                                   )
GAP, INC.,           )
                                   )
                 Defendant.    )

## ORDER

Currently pending before the Court is defendant's motion for summary judgment (Doc. No. 45) and its suggestions in support (Doc. No. 46).

## I. BACKGROUND[1]

This is an employment discrimination action in which plaintiff, Alice Brown ("Brown"), alleges race and religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. against defendant employer, Gap, Inc. ("Gap"). The facts underlying this case are as follows.

Brown, who was born in the Dominican Republic, identifies herself as Hispanic. Brown began her employment as a full-time sales associate with Gap Store 1209 in Kansas City, Missouri on April, 14, 2003. At the time of Brown's employment and during the time in which Brown alleges the allegations were made, the district manager for Gap was

---

[1]In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir. 1996). Accordingly, all facts set forth in the Court's statement of facts will be taken from defendant's motion for summary judgment (Doc. No. 45) and its suggestions in support (Doc. No. 46) unless otherwise specified.

Jennifer Sinnett and Amanda Coons ("Coons") was the Store General Manger and Brown's supervisor from July 12, 2003 to June 4, 2005. In addition, Gap Store 1209 employed approximately four to five assistant managers and 90 to 100 sales associates during the relevant time period.

In order to be considered a full-time sales associate at Gap, an employee had to provide 80 hours of availability per week, including two closing shifts and all-day availability on two of the three weekend days (Friday, Saturday, and Sunday). Employees can adjust their availability at any time and will not be scheduled to work hours designated as not available. Full-time employees are regularly scheduled to work 30 hours or more per week and are eligible for benefits including Paid Time Off ("PTO") and health insurance. From Brown's date of hire until May 12, 2005, her availability was Mondays, Tuesdays, Fridays, and Saturdays from 8:00 a.m. to 5:00 p.m. Brown advised Gap she could not work on Sundays because she is Pentecostal and Sunday is her day of religious observance. Although Brown did not meet the availability requirements for a full-time employee, Brown was classified as a full-time employee.

Brown was never scheduled to work on Sundays during her time at Gap. However, Gap did hold its store meetings on Sundays because Sunday worked with the other employees' schedules. Brown notified Gap that she was not able to attend the Sunday store meeting because that is the day of her religious observance. Brown received notice of the Sunday meetings on her Individual Schedule, a printout given to each employee of their work schedule.

On April 1, 2005, Gap implemented a new forecasting and budgeting tool called the Payroll Allocation Worksheet ("PAW") as a company-wide initiative to more efficiently

allocate payroll hours per store.  Store 1209 had been operating with approximately 1200 to 1300 employee-payroll hours per week, but with PAW, the Store's allocation was reduced to 900 to 1000 payroll hours.  Due to Brown's availability and the need to schedule employees during peak customer hours, Brown's hours would be reduced with the implementation of PAW.  Thus, on February 23, 2005 and March 3, 2005, Coons met with Brown to explain the upcoming changes with PAW and the need for Brown to change her availability to maintain her full-time status.  District Manger Jennifer Sinnett was also present during the March 3, 2005 meeting.

After the meeting on March 3, 2005, Brown contacted Gap's employee complaint hotline and alleged that her hours were being reduced due to her race.  Thereafter, Gap began an internal investigation into Brown's complaints.  Gap interviewed Brown on March 15, 2005.  During the investigation, Brown reported that: (1) her paid time off ("PTO") had been used without her authorization; (2) she was required to attend store meetings on Sunday, which is her day of religious observance; and (3) she believed her hours had been reduced because she refused to attend the store's Sunday meetings and were going to be further reduced.  The focus of Brown's complaints involved General Manager Coons, who assumed this position on July 12, 2003 after replacing another General Manager, who had originally hired Brown.  Currently, Coons is no longer employed at Store 1209 as she transferred from the store on June 4, 2005.

Between July 2003 and February 9, 2005, Brown claims that her PTO was applied and paid to her on 16 occasions without her authorization.  Gap's investigation showed that there were times when one or more supervisors applied Brown's PTO without her authorization or request.  Gap concluded the reason the supervisors engaged in this

practice was to make sure Brown maintained 30 hours per week. Brown was paid for all of the PTO time that was applied and was never denied a request for time off. After Brown's complaint, Store 1209 management instructed supervisors not to apply PTO without authorization from employees any longer and began requiring that employees make a written request for PTO.

On May 12, 2005, Brown modified her availability to Wednesday and Thursday from 9:00 a.m. to 7:00 p.m., Friday from 9:00 a.m. to 5:30 p.m., and Saturday, 9:00 a.m. until 6:30 p.m. This change in Brown's availability still did not meet Gap's full-time status requirements because Brown did not provide 80 hours of availability during the week, she was not available to close two days of the week, and she not have open availability on two of the three weekend days. However, Gap continued to schedule Brown as a full-time employee until September 2006.

On June 22, 2005, Brown filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") alleging that Gap discriminated against her because of her race, religion, and age. Almost one year later, Brown filed her lawsuit in this Court on May 5, 2006 based on the Charges she filed with the MCHR and EEOC, in which she alleges discrimination based on her race and religion.[2] In September 2006, Brown became a part-time employee as a result of a new company-wide program to move toward more efficient scheduling with a part-time workforce and to enforce full-time eligibility/availability

---

[2]In plaintiff's Complaint before this Court, she did not allege discrimination based on age. Thus, the Court will only consider plaintiff's race and religious discrimination claims.

4

requirements that Brown had never met. Due to discussions initiated during the course of this litigation, Brown finally revised the hours she was available to work and returned to full-time status in approximately March 2007. Currently, Brown is still employed at Gap and has never been discharged by Gap.

Defendant now seeks summary judgment on plaintiff's race and religious discrimination claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the

disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

## III. DISCUSSION

### A. Religious Discrimination Claim

Under Title VII, it is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...religion." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of religious discrimination, plaintiff must prove that (1) the employee had a bona fide religious belief that conflicted with an employment requirement, (2) the employee informed the employer about the belief, and (3) the employee was discharged or disciplined for failing to comply with the employment requirement. See Cruzan v. Special School District, 294 F.3d 981, 983 (8th Cir. 2003); Wilson v. U.S. West Communications, 58 F.3d 1337, 1340 (8th Cir. 1995). To constitute an adverse employment action, an action must involve "a diminution in title, salary, or benefits." Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994).

6

"Changes in duties or working conditions that cause no materially significant disadvantage....are insufficient to establish the adverse conduct required to make a prima facie case." Id. If the plaintiff sets forth a prima facie case, "the burden shifts to the employer to show that accommodation would result in undue hardship." Seaworth v. Pearson, 203 F.3d 1056, 1057 (8th Cir. 2000).

Gap argues that plaintiff's religious belief of not working on Sundays did not conflict with any employment requirement at Gap. Gap states that plaintiff was never scheduled to work on Sundays nor was she required to attend the Sunday store meetings. Gap notes that Brown was generally scheduled anywhere between 25 and 32 hours per week and her status as a full-time employee never changed prior to 2005. Although the Sunday meetings appear on Brown's Individual Schedule, Gap states that the Sunday meetings were automatically added to the schedule of all store employees. Gap further states that the reference to the Sunday meetings on Brown's schedule gave her notice about the meetings so that she could get the information discussed during those meetings. Gap argues that the meeting notice on Brown's schedule is not a "tangible change in duties or working conditions that constitutes a material employment disadvantage" required to support a Title VII claim. Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1999). In addition, Gap asserts that the Sunday meeting notice or Brown's lack of attendance at the meetings did not affect her title, salary, or benefits. Thus, Gap contends that it accommodated Brown's religious belief by not requiring her to work on Sundays nor attend the Sunday meetings. Additionally, Gap argues that even if Brown's hours were reduced, it was due to legitimate business needs to the store and was not the result of any discrimination against Brown.

7

Lastly, Gap argues that while it admits that Gap applied Brown's PTO time without her authorization on a few occasions, such an action does not constitute an adverse employment action and no harm was done to Brown as she was paid for all PTO time taken. Gap also notes that once Brown complained of the situation and the complaint was investigated, Gap never applied Brown's PTO time without her authorization.

Brown responds that it was an employment requirement that she attend the Sunday meetings. She alleges that her hours were reduced because she could not attend the Sunday meetings based on her religious belief. Brown stated that Coons told her "it was not fair that other[s] had to attend the mandatory meetings on Sunday and I [Brown] did not." Brown does, however, admit that she was not required to work any shifts on Sundays. Additionally, Brown responds that Gap is still applying her PTO time without her authorization as recently as August 2007.

The parties in this case do not dispute that plaintiff had a bona fide religious belief that conflicted with her working on Sundays or attending the Sunday meeting. The parties also do not dispute that Brown communicated this religious conflict with Gap. Both parties admit that Brown was never scheduled to work any Sunday shifts. However, what is genuine dispute is whether Brown was required to attend the Sunday store meetings. While Gap states that it did not require Brown to attend the Sunday meetings, Brown states that she was required to attend the Sunday meetings and was told that if she did not attend the meetings, her hours would be cut. Upon review of the exhibits filed to Gap's motion for summary judgment, the Court found evidence supporting plaintiff's claim that the meetings were indeed mandatory. For example, in Brown's Individual Schedule dated August 14, 2005 to August 20, 2005, a message stated that a "Mandatory All Store Meeting is Sunday,

8

August 14th from 7-10 pm." (<u>See</u> Exhibit D, Exhibits to Alice Brown's Deposition). Another schedule from May 22, 2005 to May 28, 2005 had a similar message which stated in relevant part: "We have a mandatory all store meeting on Sunday, May 22 from 7-10pm. You will be held accountable for all information covered in the meeting. If you choose not to attend the meeting, it is your responsibility to ask a peer for the information that was covered." (<u>See</u> Exhibit D, Exhibits to Alice Brown's Deposition). Thus, Gap's own schedule states that the meetings were mandatory. Therefore, the Court finds that sufficient evidence exists to create a genuine issue of material fact on the issue of whether the Sunday meetings were an employment requirement.

However, the Court finds that even if the Sunday meetings are considered a mandatory requirement that conflicted with Brown's religious belief, Brown fails to establish a prima facie case of religious discrimination because she suffered no adverse employment action. The Court concludes that Brown did not suffer any type of demotion, reduction in pay or benefits, change in seniority, or change in title. Additionally, Gap never disciplined nor discharged Brown. In fact, Brown remained a full-time employee during the relevant period in which she complained of discrimination despite the fact that she did not meet Gap's requirements to be a full-time employee and Brown continues to be employed at Gap.

Moreover, the Court concludes that any reduction in hours that Brown suffered is not sufficient to constitute an adverse employment action because the decrease was not significant. First, any reduction in hours did not change Brown's status as a full-time employee. Second, upon review of plaintiff's payroll stubs, the Court finds that on average, plaintiff's hours were at least 50 hours per pay period. Plaintiff's hours fell below 50 hours

9

in the following four instances: for the pay period March 21, 2004 to April 3, 2004, plaintiff's hours were 32.25; for the pay period September 7, 2003 to September 20, 2004, plaintiff's hours were 41.00; for the pay period July 25, 2004 to August 7, 2004, plaintiff's hours were 31.00; and for the pay period March 6, 2005, to March 19, 2005, plaintiff's hours were 30.25. In 2003, plaintiff's hours were 41, 55.25, 59.25, 55.75, 56.50, 52, and 52. In 2004, plaintiff's hours were 59.75, 32.25, 58.75, and 31.00. In 2005, plaintiff's hours were 51.00, 57.50, and 30.25 hours ending in March 2005. The data reflects a normal retail employee's schedule with fluctuation and rarely the same hours in consecutive weeks. Baucom v. Holiday Companies, Inc., 428 F.3d 764, 767-68 (8th Cir. 2005). When plaintiff worked less than 50 hours, Gap used her PTO time; thus plaintiff was still paid her usual rate of pay. Also, when plaintiff worked less than 50 hours for the pay period August 10, 2003 to August 23, 2003, plaintiff indicated she was away in New Orleans and did not work some of the days during that pay period. The Court does not consider this reduction in hours to amount to an adverse employment action especially when plaintiff maintained her full-time status and the reduction did not materially affect her wages or benefits. See Jones v. Fitzgerald, 285 F.3d 705, 714 (8th Cir. 2002)(transfer or reassignment that involves only minor changes in working conditions and does not involve reduction in pay or benefits is not adverse action). Although plaintiff alleges there were times her hours were reduced to 5 or 12 hours per week, plaintiff failed to provide any evidence of such occurrences and the record does not reflect that plaintiff's hours fell so dramatically.

In addition, the record indicates that Brown could have increased her availability on certain days in order to increase her hours. For example, when Brown filled out an availability agreement on April 8, 2003, she said she was not available on Sunday,

Wednesday, and Thursday. On March 3, 2005, Gap informed Brown that she would have to increase her availability on certain days if she wished to maintain her full-time status. Although Brown filled out another availability agreement on May 12, 2005, Brown stated she was not available on Sunday, Monday, and Tuesday in this agreement. Despite not meeting Gap's full-time status requirements, Gap still kept Brown as a full-time employee. Brown could have added that she was available on Monday and Tuesday in 2005 in order to increase her hours without affecting her religious day of observance, but she did not do so. Brown did not change her availability so as to come into compliance with Gap's full-time status requirement until March 2007. Thus, the Court cannot conclude that Brown's reduction of hours constitute an adverse employment action when Brown did not make herself available on certain days of the week even after she was informed that she had to increase her availability. Pitchford v. Potter, 72 F. Appx. 506, 507-08 (8th Cir. 2003)(per curiam)(unpublished decision)(finding that "reduction of hours did not constitute an adverse employment action, given that [employee] had refused offers of other work that would have provided him with the same number of hours.").

Further, the Court finds that when Gap applied Brown's PTO without her authorization, this did not constitute an adverse employment action. Brown was compensated for all the PTO that Gap misapplied without her authorization. Also, there is no evidence on the record that Gap denied any of Brown's requests for PTO. Brown alleges on at least two occasions, she was denied paid leave but she did not provide any supporting documentation for these alleged incidents. Additionally, Brown did not demonstrate that her PTO was misapplied on the basis of her religion or any other improper motive. While the practice of Gap taking Brown's PTO without her authorization

11

may still occur, the Court cannot consider those instances as part of plaintiff's claim because they occurred after Brown filed her charge of discrimination.

Because plaintiff has failed to demonstrate that she has suffered any adverse employment action, the Court finds that plaintiff has failed to establish a prima facie case of religious discrimination. Therefore, the Court hereby **GRANTS** defendant's summary judgment motion on plaintiff's religious discrimination claim.

**B.     Race Discrimination Claim**

    *1.     Direct Evidence*

Plaintiff provided no direct evidence of race discrimination. Direct evidence is evidence that establishes "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003) (quotations omitted). "'Direct evidence does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or statements by decisionmakers unrelated to the decisional process itself.'" Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 635 (8th Cir. 1998) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989). Brown did not provide statements from co-workers or supervisors that were discriminatory in nature.

    *2.     Indirect Evidence*

Because plaintiff has put forth no direct evidence of race discrimination, the Court will analyze plaintiff's claims under the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792, 801-04 (1973). First, plaintiff must first establish a prima facie case

of discrimination to establish a claim under Title VII. <u>Ross v. Kansas City Power & Light Co.</u>, 293 F.3d 1041, 1046 (8th Cir.2002). To establish a prima facie case of race discrimination under Title VII, plaintiff must show: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. <u>Philip v. Ford Motor Co.</u>, 413 F.3d 766, 768 (8th Cir. 2005). If a prima facie case is established, a "burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for firing the plaintiff." <u>Johnson v. Ready Mixed Concret Co.</u>, 424 F.3d 806, 810 (8th Cir. 2005). If the employer makes such a showing, the plaintiff must then demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515-16, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

The Court concludes Brown fails to present a prima facie case of race discrimination because she did not suffer any adverse employment action. As stated above, Gap did not discipline, discharge, or demote Brown. Additionally, Brown failed to show that similarly situated employees who were not members of the protected group were treated differently. There is no evidence on the record that Brown's PTO was misapplied or that plaintiff's hours were reduced on the basis of Brown's race. Because the Court finds that Brown suffered no adverse employment action, plaintiff has failed to establish a prima facie case of race discrimination. Therefore, the Court hereby **GRANTS** defendant's summary judgment motion on plaintiff's racial discrimination claim.

13

**IV.  CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Doc. No. 45) is **GRANTED**.   It is further ordered that the Clerk of the Court send a copy of this Order by regular and certified mail to: P.O. Box 11553, Kansas City, MO 64138-0053.

**IT IS SO ORDERED.**

Date:__12/21/07____                          **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                        Fernando J. Gaitan, Jr.
                                             Chief United States District Judge

14